WENTWORTH, Judge.
Appellant, the employer/self-insured, seeks review of a workers’ compensation order by which it was ordered to pay a $40,000 attorney’s fee based on bad faith. Appellant contends the deputy commissioner erred in basing the fee on bad faith, asserting that the issue was not tried in a separate hearing and no evidence of bad faith was presented at the fee hearing. Appellant also seeks a determination of the applicable attorney’s fee statute as to permanent total disability benefits awarded appellee as a result of merger of disabilities from accidents which occurred in 1973, 1978, 1980 and 1981. Appellant challenges the fee amount, arguing that insufficient evidence was presented as to the value of benefits obtained and time expended on the case. We find the deputy commissioner did not err in granting a fee based on the permanent total disability benefits awarded by the March 18, 1986 order. That order reserved only the issue of the amount of fees and made specific factual findings based on evidence presented at the merits hearing sufficient to support the conclusion, in the order now appealed, that appellant had incurred liability for a fee by dilatory conduct recited in both orders.[1] *382 However, we reverse for a determination of appellee’s entitlement to a fee under the 1977 fee statute as to permanent partial disability benefits obtained resulting from a 1978 accident, and for a recomputation of the fee amount.
The deputy commissioner in the March 18, 1986. order awarded appellee, a 41-year-old former city policeman: 1) 34 weeks of compensation benefits representing a 17 percent permanent partial disability of the leg, commencing June 4, 1979, and equal to $4,284; 2) permanent total disability benefits, commencing January 10, 1984, and continuing for so long as the claimant remains disabled; and 3) penalties and interest on the late payment of benefits, medical bills, expert witness fees and future psychiatric care. Appellee was injured in four compensable accidents occurring in 1973, 1978, 1980, and 1981. The permanent total disability award was based upon a finding that appellee no longer was able to perform sheltered work following the 1981 accident, was terminated from his job in 1983 and was physically and mentally incapable of engaging in any type of work after that date. The deputy commissioner found that appellee is 100 percent disabled as a result of the impairment resulting from the 1981 accident, when merged with disabilities from the earlier accidents. The permanent partial disability award stemmed from an increased 17 percent permanent physical impairment of the •left leg resulting from the 1978 accident, which appellants conceded they had not paid. In the order, the deputy commissioner found that appellant’s 1984 authorization of psychiatric care was not a timely proffer when the authorized treating physician first advised it in 1981 of appellee’s urgent need for such care. The deputy commissioner found that appellee was entitled to a reasonable attorney’s fee, and reserved jurisdiction for the purpose of a hearing to determine the fee amount.
At the fee hearing, appellee’s' attorney initially stated: “This case does not involve bad faith. This is an old statute case.” The deputy later corrected his misstatement as to the statute applicable to the last accident. Appellee then asserted that there was bad faith shown by findings in the first order that the employer/carrier failed to timely proffer authorization for the requested psychiatric care. After extensive confusion in argument[2] by the parties’ respective attorneys as to whether bad faith was an issue to be litigated with respect to the award of permanent total disability benefits based on the merger of disabilities from four accidents, the attorneys agreed that bad faith did not “enter into” that hearing.[3] The deputy commis *383 sioner entered an order awarding appellee a $40,000 fee, entitlement to which was based upon appellant’s bad faith in handling the claim. Appellant filed a motion for rehearing, challenging the bad faith basis for the award. Following a hearing, the deputy commissioner denied the motion after determining that the oral stipulation by counsel at the hearing meant only that bad faith was not an issue remaining to be litigated at the hearing set to fix the amount of the fee.
The statutory provision on merger in effect at the time of the last compensable injury here in question is section 440.-15(5)(b), Florida Statutes (1981), under which merger “means the combining of a preexisting permanent impairment with a subsequent compensable permanent impairment which, when the effects of both áre considered together, result in a permanent impairment rating which is greater than the sum of the two permanent impairment ratings when each impairment is considered individually.” The deputy commissioner here awarded appellee permanent total disability benefits based on a merger of disabilities from four accidents, the last of which occurred in 1981. The applicable fee statute was section 440.34(3)(b), Florida Statutes (1981), providing for a fee award only (1) where the claimant successfully asserts a claim for medical benefits alone, (2) the employer/carrier denied that a com-pensable injury occurred for which benefits were payable, or (3) the carrier acted in bad faith in handling the claim.
Appellant argues that the bad faith basis for the fee award was improper because the issue was not litigated at a separate hearing, and no evidence of bad faith was presented at the fee hearing. Section 440.34(3)(b) provides that “[a]ny determination of bad faith shall be made by the deputy commissioner through a separate fact-finding proceeding.” This court has construed that language as not requiring a temporally separate hearing on the issue of bad faith. Embry-Riddle Aeronautical University v. Vestal, 399 So.2d 1033 (Fla. 1st DCA 1981). Instead, the requirement is “that the question of bad faith be specifically litigated as a separate issue with factual evidence presented going directly to that issue.” Id. at 1035. See also, Rivers v. SCA Services of Florida, Inc., 465 So.2d 634 (Fla. 1st DCA 1985); Closet Maid Corporation v. Wilson, 429 So.2d 419 (Fla. 1st DCA 1983). In this case bad faith was specifically asserted in the claim and, by the terms of the merits order which was apparently not appealed,[4] evidence bearing on that issue was submitted. That order found that appellee was entitled to an attorney’s fee, reserved jurisdiction only to determine the fee amount, and made specific findings as to the predicate facts supporting the conclusion of bad faith in the present order, i.e., that appellant failed to proffer authorization of necessary psychiatric care for several years after ap- *384 pellee’s initial request for such care, and in that and other respects handled the claim in bad faith “so as to cause [claimant] to suffer economic loss.” The bad faith issue was therefore litigated in substance at the merits hearing upon submission of evidence going to that issue, and the necessary facts were determined in that order. Because the terms of that order provided adequate notice that those facts had been determined pursuant to a claim specifying the bad faith issue, appellant’s assertion at the subsequent hearing that it did not have notice that bad faith was an issue lacks persuasive force. The bad faith basis for the fee award as to the permanent total disability benefits obtained therefore was not error.
The deputy commissioner also awarded appellee permanent partial disability benefits relating to a May 15, 1978 accident. Section 440.34(1), Florida Statutes (1977), provided that an attorney’s fee may be awarded when the employer/carrier “shall decline to pay a claim on or before the 21st day after they have notice of same, or shall otherwise resist unsuccessfully the payment of compensation, and the claimant shall have employed an attorney at law in the successful prosecution of the claim....” The compensation order stated that appellant acknowledged that appellee had been rated by an authorized treating physician as having suffered a 17 percent permanent physical impairment of the left leg as a result of the 1978 accident, but had not paid this disability rating. The order awarding the fee, however, does not predicate entitlement to any portion of the fee upon appellant’s failure to pay these benefits.
Appellant challenges as speculative the inclusion in the basis for a fee the amount of a $500 bill for past psychiatric services, and $10,000 for future psychiatric care. No evidence other than appellee’s handwritten estimates were presented as to the value of the past and future psychiatric care. Such a speculative basis for the valuation of medical care and costs has been considered insufficient as a predicate for a fee award. Barr v. Pantry Pride, 518 So.2d 1309 (Fla. 1st DCA 1987); Basford v. Florida Power & Light Co., 246 So.2d 1 (Fla.1971). Appellant also correctly argues that the deputy commissioner failed to determine the fee customarily charged in the community for similar services, as required by section 440.34(1). Remaining arguments as to the fee amount are without merit.
We therefore reverse and remand for determination of appellee’s entitlement to a fee under the 1977 statute for the benefits obtained relating to the increased disability rating due to the 1978 accident, and for recomputation of the amount of the fee award.
ZEHMER and BARFIELD, JJ., concur.

. The March 1986 order made detailed factual findings as to extraordinary delay in authorization of care, stating in part as follows:
... I find that as far back as January 9, 1980, the authorized attending and treating physician, Dr. Joel Kalian, advised the City the claimant needed psychiatric evaluation and treatment ... and in subsequent written communications ... the urgent need for psychiatric care was again communicated to the City. I find that the City’s authorization of Dr. Herrera on April 11, 1984, more than four years after the initial request for psychiatric treatment and care was not a timely proffer of authorization....
I find that claimant's counsel ... are entitled to a reasonable attorneys fee ... the amount of such fee to be determined at a subsequent fact finding proceeding to be scheduled and held before me.
WHEREFORE, in view of the foregoing findings of fact, it is the order of the undersigned, that the City of Miami do hereby pay the following benefits:
[[Image here]]
(b) Pay to the claimant, permanent total disability benefits, at a compensation rate of 1228.00 per week, commencing January 10, 1984, and continuing for so long as the claimant remains so disabled.
[[Image here]]
(f) Jurisdiction is specifically reserved for the purpose of hearing and determining the amount of a reasonable attorneys fee
[[Image here]]
The order of January 1987 now on appeal recites much of the chronology covered in the earlier order:
I find that the manner in which the City handled and adjusted this workmen’s compensation claim was not within the spirit of the Workmen’s Compensation Law and constituted “bad faith’ in handling this injured worker's claim so as to cause him to suffer economic loss. I find that the City suspended further payment of compensation benefits as of August 31, 1985, alleging that the claimant was able to return to work, although at the time of such suspension, the City’s representatives knew that the claimant’s attending and treating physician, Dr. Joel Kalian, had recently reported that because of the claimant’s multiple disabilities and impairments, he was, for all intents and purposes, 100% disabled; the attending and treating psychiatrist, Dr. Charles Mutter, continually advised the City the claimant was unable to work and in need of active hypnotherapy; and the rehabilitation counselor, Mr. Claude Seltzer, whose services were independently engaged by the City of Miami in an attempt to determine if the claimant was employable in the open labor market, had been unable to place the claimant in any type of remunerative employment or to come up with any viable plan that there was even a possibility with appropriate training or education the claimant could be rehabilitated to the extent that he could eventually achieve gainful employment, notwithstanding the fact *382 that he had been actively working with the claimant for over one (1) year in an attempt to place him in some type of remunerative employment. I further find that despite repeated requests and the filing of a formal claim in Tallahassee, Florida, the City of Miami failed to provide the claimant with psychiatric^ treatment or care until April 11, 1984, more than four (4) years after the initial request for psychiatric treatment by the claimant’s attending physician, Dr. Joel Kalian, as well as subsequent written communications by Dr. Kalian with the City. Accordingly, due to the acts of “bad faith' by the carrier in its handling of this workmen’s compensation claim, I find that the claimant is entitled to recover a reasonable attorneys fee directly form the employer, CITY OF MIAMI.

. Counsel for appellant argued before the deputy only "that the new act portion, which would be one fourth, should be apportioned out of this award.”

. The record shows the following:
MR. SUAREZ-RIVAS: I don’t believe that that was noticed today as a bad faith issue and, if that is true, Your Honor, isn’t there supposed to be a separate fact finding hearing?
MR. WILLIAMS: That’s what we’re having today.
MR. SUAREZ-RIVAS: Oh, that is what we’re having today. Oh, okay.
[[Image here]]
DEPUTY COMMISSIONER: Well, when he testified he said he wasn’t traveling on bad faith ... He was under the impression that all were pre-’79 accidents I think.
[[Image here]]
MR. SUAREZ-RIVAS: ... [J]ust as apportionment is a viable defense for other issues here, where the PT results from a merger of these prior accidents with a new act accident I think the new act portion of the impairment or disability must be removed because there is just no basis on which to award a new act attorney fee against the City.
MR. WILLIAMS: Now, that isn’t true. You denied psychiatric care. The order says pay *383 psychiatric care and provide future psychiatric care. The City denied psychiatric care. MR. SUAREZ-RIVAS: Excuse me, Your Hon- or. He is misquoting the order. The order said that we offered a psychiatrist, Dr. Herrera, which we did, but that it was late offered. I don’t think that that means that we refused it.
MR. WILLIAMS: That’s bad faith, not promptly authorizing necessary medical care_ It wasn't attributable — nothing is attributable to any one accident....
[[Image here]]
DEPUTY COMMISSIONER: All of it is for all—
MR. WILLIAMS: Yes, sir. And that’s what the order finds. But if you want to — if we’re going to have the issue of bad faith—
MR. SUAREZ-RIVAS: Your Honor, he has rested....
MR. WILLIAMS: You brought up the bad faith.
MR. SUAREZ-RIVAS: No, I didn’t. You’re the one that — no, I didn’t. Then I strike that because I misunderstood.
MR. WILLIAMS: Okay. Let’s strike the bad faith question_ Bad faith doesn’t—
DEPUTY COMMISSIONER: Doesn’t enter into this.
[[Image here]]
MR. SUAREZ-RIVAS: I’ll agree to that.

. To the extent that the order determined predicate facts of bad faith, it would appear to have been interlocutory and subject to later challenge, but the point is academic since appellant here does not controvert the evidentiary support for those findings.